IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

KENDRA BASKERVILLE,

                 Plaintiff,

       -vs-

PLEASANT LAKE VILLA, et al.,

                Defendants.

---

CASE NO. 1:14 CV 00025

<u>OPINION AND ORDER GRANTING
THE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Before the Court is an unopposed motion for summary judgment filed by the defendants Pleasant Lake Nursing Home, Inc. d/b/a Pleasant Lake Villa, Joann Halun, and Margaret Roschival. For the reasons that follow, the motion will be granted.

I.

    Defendant Pleasant Lake Villa is a family-owned and operated skilled nursing and assisted living facility in Parma, Ohio. The plaintiff Kendra Baskerville is a State Tested Nursing Aid ("STNA"). In 2007, Ms. Baskerville was diagnosed with epilepsy,

which causes her to experience both "grand-mal" and "partial" seizures.[1] (Baskerville Depo. at 92). Although her condition is treated with medication, she experiences seizures approximately once every three months. (Baskerville Depo. at 35-37).

In June, 2012, the plaintiff visited Pleasant Lake's facility seeking a job as an STNA. (Baskerville Depo. at 29, 152). During her visit, the plaintiff filled out an employment application for an STNA position, and she was given an on-the-spot interview by Candace Weber. (Baskerville Depo. at 29, 152). According to the plaintiff's deposition testimony, Ms. Baskerville informed Ms. Weber of her epilepsy condition, but she admitted that she did not tell Ms. Weber that she still experienced seizures even while on medication. (Baskerville Depo. at 77-78). Ms. Baskerville did not recall informing Ms. Weber how frequently her seizures occurred. (Baskerville Depo. at 77-78). Ms. Baskerville also did not recall informing Ms. Weber of her prior termination by Eliza Bryant Village (another nursing home) due to safety concerns associated with her risk of seizures. (Baskerville Depo. at 76-77).

After considering Ms. Baskerville's application and the information she disclosed, Pleasant Lake offered her an STNA position. (Baskerville Depo. at 31, 90). As an STNA, the plaintiff's job involved providing care for elderly residents, many of whom are frail and require extensive medical attention. This included helping residents get out of

---

[1] Plaintiff describes a grand mal seizure: "That's when you shake, I can fall on the floor, I can still remain on the chair, but that's the big part. The 'grand' word is actually a good word to describe what could happen." (Baskerville Depo. at 32). A partial seizure is less severe. As described by the plaintiff, it is "where I can just sit here, I can begin to what appears to be staring off. [sic] You could try to get my attention by calling my name or tapping on the table and I'm just kind of out of it for a while, and then I could come to." (Baskerville Depo, at 32).

2

bed, walk, get into a wheelchair, use the restroom, use a bedpan, bathe, and change their clothes. (Baskerville Depo. at 28, 61-62, 183-86). The position also required that she help lift and move residents. (Baskerville Depo. at 186). According to the defendants, ensuring the safety of Pleasant Lake Villa's residents was an indispensable requirement of the plaintiff's job. (Taylor Decl., ¶5).

On August 21, 2012, while assigned to monitor a resident "one-on-one," the plaintiff experienced a grand mal seizure while on the job. (Baskerville Depo. at 152-53). According to her deposition testimony, the plaintiff tried to turn and call for help, but she could not remember whether she got the words out of her mouth before losing consciousness and falling to the floor. (Baskerville Depo. at 153). The plaintiff did not regain consciousness until waking up in the hospital. (Baskerville Depo. at 153).

After recovering from her seizure, Ms. Baskerville provided Pleasant Lake with a return-to-work letter from her physician advising the plaintiff to avoid certain activities where a loss of consciousness would create a risk of harm to herself or others (e.g., driving, working in close proximity to machinery, swimming, working in high places or bathing). (Baskerville Depo. at 46, Exhibit I). The plaintiff understood and agreed that those restrictions were in accord with the physician letter she had provided her previous employer Eliza Bryant Village a year earlier. She acknowledged that her physician advised that she avoid activities that could present harm to herself or others in the event of a sudden loss of consciousness. (Baskerville Depo. at 74-76).

Upon realizing the risk posed by Ms. Baskerville's unpredictable condition, and considering the threat her seizures could cause to residents' safety, Pleasant Lake decided to terminate her employment as an STNA. (Taylor Decl., at ¶6). Defendant

3

Roschival, Pleasant Lake's Staff Development Coordinator, met with the plaintiff and informed that her employment as an STNA was being terminated. Ms. Roschival explained to the plaintiff that the risk of seizures posed a danger to residents and to herself. (Baskerville Depo. at 57-58, 163).

During her deposition, Ms. Baskerville acknowledged that her risk of seizures created a safety concern for Pleasant Lake's residents. (Baskerville Depo. at 67, 185, 187-88). The plaintiff acknowledged that her physician advised her to avoid activities that could present harm to herself or others in the event of a sudden loss of consciousness. (Baskerville Depo. at 75). Plaintiff admitted that if she were to have a seizure while helping move a resident, the resident would likely fall. (Baskerville Depo. at 60-61). Plaintiff further testified that it is not just grand mal seizures that would present a danger, but partial seizures as well. (Baskerville Depo. at 86).

Although she recognized the risk posed by her seizures, Ms. Baskerville maintains that Pleasant Lake should not have hired her in the first place. She testified: "knowing that it was a possibility that I could have a seizure, because I had many seizures before I came to Pleasant Lake, then they shouldn't have hired me in the beginning." (Baskerville Depo. at 60). "[I]f they didn't understand what epilepsy meant or what it would be, the outlines of my epilepsy would bring, then I think that they should not have hired me."(Baskerville Depo. at 53).

Ms. Baskerville claims that, after being informed of her termination by Ms. Roschival, she requested to be reassigned to another position in housekeeping or in laundry. (Baskerville Depo. at 188). The defendants dispute that she ever requested reassignment or any other accommodation. (Roschival Depo, at 14). Pleasant Lake

4

maintains, and the plaintiff does not dispute, that it did not have any vacant position available, including in housekeeping and laundry, within six weeks before and six weeks after the time that the plaintiff allegedly made her request for reassignment. (Taylor Decl., ¶7; Baskerville Depo. at 164).

Besides the fact of her termination, the plaintiff agreed that she was treated well at Pleasant Lake Villa. (Baskerville Depo. at 150). No one ever made a negative comment to her about her epilepsy, and no one ever made fun of her because of her epilepsy. (Baskerville Depo. at 150). Plaintiff further testified that Ms. Roschival was polite to her when she informed her of her termination, and that she has no reason to believe Ms. Roschival was trying to embarrass or humiliate her. (Baskerville Depo. at 199).

Plaintiff filed this lawsuit on November 21, 2013, against Pleasant Lake Villa, as well as Ms. Roschival and Ms. Halun, the plaintiff's nursing supervisor, personally. The complaint contains the following causes of action: (1) disability discrimination under 42 U.S.C. § 12112 and Ohio Revised Code § 4112.02; (2) failure to accommodate under 42 U.S.C. § 12112 and Ohio Revised Code § 4112.02; (3) Wrongful Discharge; (4) Wrongful discharge in violation of public policy; (5) retaliation under Ohio Revised Code § 4167.13; and (6) intentional infliction of emotional distress. Ms. Baskerville maintains she is entitled to a total monetary award in excess of $25,0000, including compensatory and punitive damages, attorney fees, and costs.

The defendants now move for summary judgment, without opposition from the plaintiff.

II.

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000) (citing Northland Ins. Co. v. Guardsman Prods., Inc., 141 F.3d 612, 616 (6th Cir. 1998)). When a motion for summary judgment goes unopposed, the Court may properly rely on facts provided by the moving party. Guarino v. Brookfield Twp. Trs., 980 F.2d 399, 404-05 (6th Cir.1992)).

*Claims against Defendants Halun and Roschival*

Defendant Roschival maintains that she is entitled to summary judgment because she did not make the decision to terminate the plaintiff's employment; rather, Ms. Roschival only reported that decision to the plaintiff. The record shows that the facility administrator, not Ms. Roschival, was the decision maker in this instance. The plaintiff fails to direct the Court's attention to any evidence to the contrary or to provide any evidence of wrongdoing on the part of Ms. Roschival. Therefore, summary judgment is granted in favor of Ms. Roschival with respect to all claims against her.

Summary judgment is also appropriate as to the claims against Ms. Halun. During her deposition, Ms. Baskerville indicated that she was not even aware that she had sued Ms. Halun, and she testified that she knew of no wrongdoing on the part of Ms. Halun. She further claimed that she did not even intend to sue Ms. Halun. In light of

these admissions, and because Ms. Halun has not otherwise been implicated in the decision to terminate Ms. Baskerville's employment, the claims against her will be dismissed as well.

*Plaintiff's discrimination and wrongful termination claims*

Pleasant Lake maintains that based on the undisputed facts of this case, it is also entitled to judgment as a matter of law with respect to plaintiff's discrimination and wrongful termination claims.[2]

It is undisputed that Pleasant Lake relied on Ms. Baskerville's disability in making its decision to terminate her employment. As stated in the defendant's affidavit, "Pleasant Lake Villa made the decision to terminate Plaintiff's employment as an STNA due to the serious safety threat posed to its elderly residents by Plaintiff's risk of seizures, which was made evident after Plaintiff experienced seizures while on the job." (Taylor Decl., ¶6). Therefore, because the employer has admitted its reliance on the plaintiff's disability in its decision to fire her, Ms. Baskerville's discrimination claim depends on application of the direct evidence standard set forth in Monette v. Elec. Data Sys. Corp. As stated therein:

> (1) The plaintiff bears the burden of establishing that he or she is "disabled."
>
> (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

---

[2] Because claims brought under Ohio Revised Code § 4112 are subject to the same analysis as those brought under the Americans with Disabilities Act, the plaintiff's federal and state law discrimination and retaliation claims will be considered together. Brenneman v. MedCentral Health Sys., 366 F.3d 412, 418 (6th Cir. 2004).

7

> (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer

Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1186 (6th Cir. 1996) (abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., 681 F.3d 312 (6th Cir. 2012)).

In this instance, there is no question that Ms. Baskerville is disabled. The only issue is whether record evidence supports the claim that Ms. Baskerville was otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, or with an alleged "essential" job requirement eliminated. "A person is 'otherwise qualified' if he or she can perform the essential functions of the job in question." In Estate of Mauro v. Borgess Medical Center, 137 F.3d 398 (6th Cir.1998) (citing Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr., 3 F.3d 922, 924 (5th Cir.1993)). "A disabled individual, however, is not 'qualified' for a specific employment position if he or she poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation." Id. (citing Doe v. Univ. of Md. Med. Sys., 50 F.3d 1261, 1265 (4th Cir.1995).

In assessing whether a plaintiff posed a "direct threat," the Court considers (i) the duration of the risk, (ii) the nature and severity of the potential harm, (iii) the likelihood that the potential harm will occur, and (iv) the imminence of the potential harm. 29 C.F.R. § 1620.2(r); Mauro, 137 F.3d at 402. With regard to the risk presented, "[a]n employer . . . is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. The risk can only be considered when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient." Mauro, 137 F.3d at 402.

8

In Olsen v. Capital Region Med. Ctr., the plaintiff was a Certified Mammography Technologist who performed mammography examinations, where she positioned patients in the machine, controlled the table movement, and collected specimens. 713 F.3d 1149, 1151 (8th Cir. 2013). The plaintiff experienced epileptic seizures unpredictably, and had experienced them on the job. Id. The Eighth Circuit held that her employer was justified in terminating her employment because "[a]n essential function of [her] job included insuring patient safety," and "[n]othing in the record establishe[d] [she] could adequately perform that function during the indefinite periods in which she was incapacitated." Id. at 1154. The court concluded that "[t]he hospital need not subject its patients to potential physical and emotional trauma to comply with its duties under…the ADA." Id.

Similarly, in Johnson v. Bd. of County Comm'rs of Shawnee County, Case No. 02-4024, 2003 U.S. Dist. LEXIS 9370 at *34 (D. Kan., May 28, 2003), the court ruled that a nurse's seizure condition, which involved seizures that caused her to "space out" for 10 to 15 seconds, posed a direct threat to patients' health and safety, as her job duties included administering medication in proper dosages and giving injections with needles.

In the present case, the undisputed facts establish that the plaintiff's epilepsy posed a direct threat herself and others. The duration of the risk is indefinite, and the likelihood that potential harm would occur high. Ms. Baskerville testified that she has a seizure once every three months even while on medication. (Baskerville Depo, at 35-37). The record shows that she had two seizures while working as a nurse's aid, first, at her prior employer, Eliza Bryant Village, and a second time within two months of her

9

hiring at Pleasant Villa. The risk of harm is significant. During her deposition, Ms. Baskerville admitted that her seizures could "come at any time," and she does not always feel them coming on. (Baskerville Deposition, at 31-34, 50). When asked what would happen if she were to have a seizure when moving a patient, she admitted that the patient would probably fall. (Baskerville Deposition, at 60-61). It is undisputed that the residents of Pleasant Villa are elderly and often frail. The plaintiff's job description included moving or transferring the residents and occasionally lifting them up from the floor. The plaintiff fails to cite anything in the factual record that would contradict this evidence. Therefore, the undisputed evidence establishes that the plaintiff was not otherwise qualified to perform the essential functions of her job. The Court accordingly concludes that the defendants are entitled to summary judgment with respect to the plaintiff's discrimination and wrongful termination claims.

*Plaintiff's failure to accommodate claim*

Ms. Baskerville claims she should have been reassigned to a different position in order to reasonably accommodate her condition. Pleasant Lake maintains it is entitled to summary judgment on this claim because Ms. Baskerville fails to identify any vacant position available at the time of her alleged request. While EEOC guidelines provide that reassignment may be considered as a reasonable accommodation, "an employer need only reassign the employee to a vacant position." Rorrer v. City of Stow, 743 F.3d 1025, 1040 (6th Cir. 2014). "The ADA does not require an employer to promote a disabled employee as an accommodation, nor must an employer reassign the employee to an occupied position, nor must the employer create a new position to accommodate the disabled worker." White v. York Int'lCorp., 45 F.3d 357, 362, (10th

10

Cir. 1995) (citing 29 C.F.R. pt. 1630, App. 1630.2(o)). See also Thompson v. E.I. DuPont deNemours & Co., 70 Fed. Appx. 332, 336 (6th Cir. 2003) ("[I]n considering reassignment, employers are not required to create new jobs, displace existing employees from their positions, or violate other employee's rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual.").

In the present case, the defendant provides evidence that there were no vacant positions available at Pleasant Lake Villa within six weeks before and six weeks after the plaintiff allegedly requested reassignment. (Taylor Decl., ¶7). Ms. Baskerville has provided no evidence to the contrary. (See Baskerville Depo. at 164). Therefore, Ms. Baskerville's failure to accommodate claim fails as a matter of law.

*Plaintiff's claim of wrongful termination in violation of public policy*

The defendant argues the plaintiff fails to state a viable claim for wrongful termination in violation of public policy, because such a claim is not recognized where the plaintiff has sufficiently broad and inclusive remedies through statutes. The Court agrees. The Ohio Supreme has held "that public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process." Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities, 594 N.E.2d 959, 965-66 (Ohio 1992). In this case, the Ohio Civil Rights Act and the Americans with Disabilities Act provide satisfactory statutory remedies that adequately protect society's interests. See Barlowe v. AAAA Int'l Driving

11

Sch., Inc., 2003-Ohio-5748, 2003 WL 22429543 (Ohio Ct. App. Oct. 24, 2003); Bennett v. Bd. of Educ., No. 2:08-CV-663, 2009 WL 2973001, at *7 (S.D. Ohio Sept. 10, 2009). Summary Judgment is granted as to the plaintiff's claim of wrongful termination in violation of public policy.

*Plaintiff's claim under Ohio Revised Code § 4167.13*

Ohio Revised Code § 4167.13 applies to discrimination by "public employers" in Ohio. Defendant Pleasant Lake is a privately owned and operated facility, and not a political subdivision or an instrumentality of the state. (Taylor Decl. at ¶4). Therefore, the plaintiff's claim under § 4167.13 is dismissed.

*Plaintiff's claim for intentional infliction of emotional distress*

Pleasant Lake moves for summary judgment as to the plaintiff's claim for intentional infliction of emotional distress. Under Ohio law, the elements of a claim of intentional infliction of emotional distress are:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

Ekunsumi v. Cincinnati Restoration, Inc., 698 N.E.2d 503, 506 (Ohio Ct. App. 1997). Conduct giving rise to an intentional infliction of emotional distress claim must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 453 N.E.2d 666, 671 (Ohio 1983) (overruled on other grounds). "[T]o

12

say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." Baab v. AMR Servs. Corp., 811 F.Supp. 1246, 1269 (N.D.Ohio 1993). "Serious" emotional distress must be "severe and debilitating." Paugh v. Hanks, 451 N.E.2d 759, 765 (Ohio 1983).

An employee's termination, "even if based upon discrimination, does not rise to the level of 'extreme and outrageous' conduct without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 376 (6th Cir.1999) (applying Ohio law).

In the present case, Ms. Baskerville has failed to provide any evidence of "something more." As she indicated during her deposition, except for being terminated, she was treated well at Pleasant Lake Villa; no one ever made a negative comment about her epilepsy; Ms. Roschival was polite when she informed the plaintiff of her termination; she had no reason to believe that Ms. Roschival was trying to embarrass or humiliate her. There is no evidence on the record that would give rise to to a claim of intentional infliction of emotional distress.

### III.

For the reasons stated above, the defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

Date: 7 July 2015

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

13